IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

APPELLATE DIVISION

| | | |
|---|---|---|
| DELTA ELECTRIC, | ) | D.C. Civ. App. No. 2006-0104 |
| | ) | |
| Appellant, | ) | Super. Ct. Civ. No. 289/2002 |
| v. | ) | |
| | ) | |
| MARC BIGGS, COMMISSIONER, | ) | |
| DEPARTMENT OF PROPERTY AND | ) | |
| PROCUREMENT OF THE GOVERNMENT | ) | |
| OF THE VIRGIN ISLANDS; and | ) | |
| GOVERNMENT OF THE VIRGIN | ) | |
| ISLANDS, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
The Honorable Maria Cabret, Judge Presiding

Considered: April 29, 2011
Filed: September 23, 2011

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **JUAN R. SANCHEZ**, Judge of the U.S. District Court, Eastern District of Pennsylvania, sitting by designation; and **AUDREY L. THOMAS**, Judge of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, sitting by designation.

Attorneys:

**Yvette D. Ross-Edwards, Esq.**
St. Croix, U.S.V.I.
          For the Appellant,

**Matthew Phelan, Esq. AAG**
St. Thomas, U.S.V.I.
          For the Appellee.

<div style="border:1px solid">

**Memorandum Opinion**

</div>

     In this appeal, we are tasked with reviewing a breach of contract action arising out of a construction agreement between a private contractor and the government of the Virgin Islands.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

     On February 12, 2001, Delta Electric Inc. ("Delta") entered into a construction contract ("contract" or "agreement") with the government of the Virgin Islands ("Government") to perform expansion work on the Youth Rehabilitation Center in Estate Anna's Hope, St. Croix ("project"). The total contract price to complete the project was $1,004,040.00. The Government was required to make periodic progress payments to Delta as work on the project progressed. The contract remained silent as to a time certain by which the Government was required to make its progress payments.[1] The Government was to retain ten percent of total payments due to Delta, to be paid upon final completion and acceptance of the contract work. The contract further provided that a Contracting Officer would decide the parties' factual disputes. Pending final decision of a dispute, Delta was required to proceed

---

[1] (App. 10, 105-106, Trial Tr. vol. 2 at 6-7.)

Case 1:06-cv-00104-CVG-GWC Document #: 29 Filed: 09/23/11 Page 3 of 14
Delta Electric, Inc. v. Government of the Virgin Islands
D.C. Crim. App. No. 2006-0104
Memorandum Opinion
Page 3

diligently with performance.[2] The contract was signed by Charles
King ("King"), Delta's president[3]; Marc Biggs ("Biggs"), then-
Commissioner of Property and Procurement[4]; and Sedonie Halbert
("Halbert"), then-Commissioner of Department of Human
Resources.[5] The agreement became effective on February 12, 2001
when it was executed by the Governor of the Virgin Islands.

Delta commenced work on the project on March 23, 2001.[6]
Shortly thereafter, on April 9, 2001, construction was
suspended while Delta secured building permits from the Virgin
Islands Department of Planning and Natural Resources. Work
resumed on April 19, 2001.

On April 26, 2001, Delta sent a letter informing the
Government that it would suspend performance because the
Government had not yet paid Delta for its mobilization costs.
The Government remitted payment on May 22, 2001. Work resumed

_____

[2] (App. 6, Contract at Appellant's Supplemental Appendix 23.)

[3] King signed the contract on November 18, 2000 and initialed
each page of the contract.

[4] Marc Biggs signed the contract on December 20, 2000 and served
as the contracting agent for the Government. (App. 57, Trial
Tr. vol. I at 44:14-15.)

[5] Halbert signed the contract on November 21, 2000.

[6] At trial, King testified that Delta did not have experience
with Government contracts of this magnitude or with Government
contracts with mobilization clauses. (App. 10, Trial Tr. vol. I
at 43:8-22.)

on June 1, 2001. During that five-week period, the island of St. Croix experienced heavy rains that damaged a cistern that was part of the project.

Delta also submitted Contract Change Order Requests for $16,293.83 to re-excavate and to re-construct the cistern. The Government denied Delta's request and Delta re-submitted its Change Order Requests. In a July 11,2001 letter, the Commissioner of Property and Procurement again denied the re-submitted request on the basis that Delta had no contractual authority to suspend its performance prior to the rains. Under protest, Delta rebuilt the cistern without additional payment. Delta did, however, receive progress payments for its continued work.

Delta ceased work for a third time, from August 28, 2001 to October 8, 2001 because it objected to the timeliness of the Government's progress payments.[7] On October 24, 2001, Delta requested payment in the amount of $94,196.59. The request sought progress payments plus the $16,293.83 cost to rebuild the cistern.

---

[7]Delta conceded that the Government's payments were consistent with how it had made payments in other contracts, including smaller contracts with Delta; and that the contract was silent as to a time certain by which the Government was to make payments. (Trial Tr. vol. 2 at 4:14-25; App. 10 citing Pl's Proposed Findings of Fact ¶ 22.)

On January 3, 2002, the parties' relationship began to
truly sour when Delta forwarded correspondence to the
Commissioner of Property and Procurement informing the
Government that it would stop work on the project until all
payment issues, including the issues involving its denied
Change Order Request, were resolved. Between January 2001 and
May 2001, Delta and the Government met on several occasions to
resolve outstanding issues.  During this period the Government
continued to make partial payments on the work Delta had
completed.[8] On May 9, 2001, the Government terminated its
contract with Delta because the time had expired for Delta to
complete the project.

On April 30, 2002, Delta filed an action in the Superior
court for breach of contract and damages. In the event that the
trial court found that no enforceable contract existed between
the parties, Delta also filed claims in the alternative,
premised on unjust enrichment and quantum meruit.

On August 30, 2004, the Superior Court held a bench trial.
Under direct examination, King, the president, manager and
owner of Delta testified that he had a contract with the
Government and tendered a copy of that contract, which was

_____

[8] King testified that he received partial payments from the
Government on January 6, 2002, January 9, 2002, February 27,
2002 and March 27, 2002.  (Trial Tr. vol. 3 at 5:4-25.)

admitted as Plaintiff's Exhibit C. (Trial Tr. vol. 1 at 19:11-14.) At the conclusion of the trial, the Superior Court judge found that the parties had executed an enforceable contract and that the Government had not breached that contract. Because the express contract defined the parties' respective rights, duties and expectations, the trial judge rejected Delta's claim for restitution damages under a quantum meruit theory of relief. This timely appeal followed.

## II.  ISSUES PRESENTED

On appeal, Delta's sole issue is whether the trial court erred when it denied Delta's unjust enrichment claim.

## III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review appeals from final decisions of the Superior Court of the Virgin Islands. *See* V.I. CODE ANN. tit. 4, § 33(2006); Revised Organic Act of 1984, § 23A, 48 U.S.C. § 1613(a)(2006); *see also Gabriel Joseph v. People of the Virgin Islands*, 2008 U.S. Dist. LEXIS 107654, at *17 (D.V.I. App. Div. Dec. 9, 2008)(the Appellate Division maintains jurisdiction over all pending appeals filed prior to January 29, 2007); *see also Hypolite v. People of the Virgin Islands*, 2009 V.I. Supreme LEXIS 3, at *5-6 (Jan 21, 2009)(same).

Contract construction or the legal operation of a contract is subject to plenary review. *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000); *Nibbs v. Roberts*, 31 V.I. 196, 204 (D.V.I. App. Div. 1995) ("The trial court's decision concerning the application of a legal precept is subject to plenary review."). Contract interpretation, on the other hand, is a question of fact, which is reviewed under a clearly erroneous standard. *See In re Cendant Corp.*, 233 F.3d at 193; *Nibbs*, 31 V.I. at 204.

## IV. ANALYSIS

Delta's only argument on appeal is that the Superior Court judge erred in not awarding Delta damages based upon a theory of unjust enrichment.

It is well established that, "[c]ontracts are traditionally classified as express, implied-in-fact or implied-in-law." *Terrace v. Williams*, 2009 V.I. Supreme LEXIS 36, at *27-28 (2009).[9] Under the unjust enrichment[10] theory

---

[9] A contract is a promise that is either stated in oral or written words (express contract) or a promise that can be inferred wholly or partially by conduct (implied contract). Restatement (Second) of Contracts § 4 cmt. a (1981). It is also well settled that an enforceable contract requires an offer and acceptance. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 250 (3d Cir. 2007). An enforceable contract also requires consideration (the bargained-for legal benefit and/or detriment) and a manifestation of mutual assent. *Terrace*, 2009 V.I. Supreme

that Delta advances; the contract is one that is implied in

law, and "not an actual contract at all."[11] *Wayne Moving &*

*Storage of N.J., Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148 (3d

Cir. 2010).

To prevail on a claim for unjust enrichment, Delta bore

the burden of showing that (1) the Government was enriched, (2)

enrichment came at Delta's expense and (3) equity required the

Government to return monies or property to Delta. *Cruse v.*

*Callwood*, 2010 U.S. Dist. LEXIS 121424 (D.V.I. App. Div. Feb.

2, 2010); *Gov't Guarantee Fund of Republic of Finland v. Hyatt*

*Corp.*, 955 F. Supp. 441, 460 (D.V.I. App. Div. 1997); *Martin v.*

*Martin*, 2010 V.I. Supreme LEXIS 45, at *26-27 (2010).

---

LEXIS at *27-28 (citing *Navair, Inc. v. IFR Americas, Inc.*, 519
F.3d 1131, 1137-39 (10th Cir. 2008)).

[10] Delta complains that the trial judge erred when it evaluated
Delta's quantum meruit claim, but not its unjust enrichment
claim. We reject Delta's substantive distinction between
quantum meruit and unjust enrichment, because "[u]njust
enrichment. . . is [essentially] a synonym for quantum meruit."
*See Powers v. Lycoming Engines*, 328 Fed. Appx. 121, 125 (3d
Cir. 2009)(unpublished); *see also Mitchell v. Moore*, 1999 PA
Super 77, 729 A.2d 1200, 1202 n.2 (Pa.Super. 1999)("cause of
action in quasi-contract for quantum meruit, a form of
restitution, is made out where one person has been unjustly
enriched at the expense of another").

[11] *See also Terrace*, 2009 V.I. Supreme LEXIS, at *31-32 (unjust
enrichment describes recovery for the value of the benefit
retained when there is no contractual relationship); *see also*
*Steamfitters Local Union No. 420 Welfare Fund*, 171 F.3d at 936
(same).

Because unjust enrichment is an equitable doctrine that applies only in implied or quasi-contractual circumstances, the doctrine is triggered only <u>where there is no contract</u> or under an unconsummated or void contract.[12] *See* RESTATMENT (SECOND) OF Contracts § 345(d)[13]; *see also In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999)(emphasis added); *Trianco, LLC v. IBM*, 271 Fed. Appx. 198, 202 (3d Cir. 2008)(unpublished)(unjust enrichment is a quasi contractual claim that the law creates in the absence of an agreement).

This bright-line rule embodies the principle that parties in contractual privity are not entitled to the remedies available under a judicially-imposed quasi-contract. In other words, the parties are not entitled to restitution based upon the doctrine of unjust enrichment, because the terms of their

_____

[12] Unjust enrichment occurs when there exists retention of a benefit conferred by another, without offering compensation in circumstances where compensation is reasonably expected in the <u>absence</u> of a contract. *Terrace*, 2009 V.I. Supreme LEXIS, at *30-31 (emphasis added)(citing Black's Law Dictionary 1573 (8th ed. 2004)).

[13] *See* V.I. CODE ANN. tit 1. § 4 ("The rules of the common law, as expressed in the restatements of the law by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.").

agreement, express and implied, define their respective rights,
duties and expectations.

In this case, the subject of the dispute was various work,
including cistern construction, that was governed by an express
contract. In its complaint, Delta grounded its breach of
contract theory of recovery on the parties' explicit contract.
At trial, Delta's president testified that he had executed a
contract with the Appellee. Unjust enrichment was raised in
Delta's complaint only as an alternate theory of recovery, in
the event that the trial court found that no contract existed.

The Superior Court, however, found that there was a valid
and enforceable contract covering the work in dispute; and
neither on appeal nor below, has Delta challenged the trial
court's finding that a valid and enforceable contract governed
the parties' dispute. Contrarily, in its opening appellate
brief, Delta cites to terms of the express contract to support
its claim for unjust enrichment. Delta's brief specifically
argues that, "[i]n this instance, the parties do have an
agreement - the construction contract." (Appellant's Brief at
10 citing Paragraph 2(d) of the contract.)(emphasis added).

Because Delta had an express contract to do the work it
complains benefitted the Appellee, it could not properly invoke
the implied contract doctrine of unjust enrichment. *In re Penn*

*Cent. Transp. Co.*, 831 F.2d at 1229 ("no implied-in-fact
contract can be found when, as here, the parties have an
express agreement dealing with the same subject."). As the
Supreme Court articulated in *Klebe v. United States*,

> [a]contract implied in fact is one inferred
> from the circumstances or acts of the
> parties; but an express contract speaks for
> itself and leaves no place for implications.
> Giving application to this rule with respect
> to contracts implied . . . this court has
> said: There cannot be an implied contract
> either in law or in fact contrary in terms
> to a controlling express contract.

263 U.S. 188 (internal citations and quotations omitted).   In
this litigation, it is undisputed that the controlling terms of
Delta's contract with the Government were explicit, express and
enforceable. [14] (*See* Supplemental Appendix 7-37.)   As such,
unjust enrichment does not apply.[15]

Indeed, Delta does not highlight a single issue or
contract term in dispute that is either distinguishable or
unrelated to the terms and scope of the express contract. *See,*

_____

[14] "[Delta] established that there was a contract between the
parties." (Appellant's Brief at 5.)

[15] Unjust enrichment only applies where there is no express
contract. *See, e.g., Morton v. Hewitt*, 202 F. Supp. 2d 394, 397
(D.V.I. App. Div. 2002) (where an express contract governs the
relationship or duties at issue a court should not award
damages on the basis of an implied or quasi-contract theory of
recovery); *Christian v. Joseph*, 23 V.I. 193, 200 (D.V.I. App.
Div. 1987)(same).

*e.g., ITT Federal Support Services, Inc. v. United States*, 531
F.2d 522, 528 (Ct. Cl. 1976)(an action under an equitable
contract theory, if it is to be valid, must be unrelated to the
express contract). For example, to be entirely unrelated to an
express contract, an implied contract would at the least have
to require the proponent to assume some duties different from
those under the formal agreement. *ITT Federal Support Services,
Inc.*, 531 F.2d at 528. Here, Delta has neither demonstrated nor
argued that any corresponding duties of performance arose as a
result of the parties' conduct or arose outside of the purview
of their written contract. *See, e.g., Somali Development Bank
v. United States*, 508 F. 2d 817, 822 (1974); *see also Hershey
Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.
1987)("a contract implied in law imposes a duty, not as a
result of any agreement, whether express or implied, but in
spite of the absence of an agreement when one party receives an
unjust enrichment at the expense of another").

Because an express contract dictated the parties' dealings
and an unjust enrichment cause of action is inapplicable where
an express contract governs the relationship between the
parties, we **AFFIRM** the Superior Court's decision. [16] *Morton*, 202

---

[16] Even if Delta could properly raise the unjust enrichment
doctrine, its claim would be deficient. Delta argues, *inter
alia*, that the Government was unjustly enriched because Delta

F. Supp. 2d at 398[17] ("claims arising from quasi-contracts and

express contracts are mutually exclusive").

---

incurred expenses in re-excavating and re-constructing a
cistern that had been flooded. However, the cistern
construction was part of the contract, re-excavation and
construction were not.

"[U]njust enrichment describes recovery for the value of
the benefit retained when there is no contractual relationship,
but when, on the grounds of fairness and justice, the law
compels performance of a legal and moral duty to pay." *Golden
Resorts, LLP v. Simpson*, 2011 V.I. LEXIS 28 (V.I. Terr. Ct.
2011)(citing *Terrace v. Williams*, 52 V.I. 225, 242 (2009)).

Delta seeks damages which include $93,196.59 for costs
associated with work stoppages and rain damage and $75,657.62
for the profit that Delta would have made if the project was
completed. (J.A. 10.) However, the flooding that necessitated
the cistern's re-excavation and re-construction occurred during
one of Delta's self-imposed work stoppages, when Delta decided
to cease work because it had a dispute concerning timely
payment. During this period, the record does not indicate that
Delta mitigated the rain damage or continued construction of
the cistern. Delta simply refused to resume work. Article 6(a)
of the parties' agreement provides in certain terms that during
the resolution of any dispute "the Contractor shall proceed
diligently with the performance of the contract. . ."
(Appellant's Supplemental Appendix 23.) Hence, Delta stopped
work on its own volition despite its clear agreement with the
Government to proceed diligently while disputes were pending.
Notably, despite Delta's work-stoppages, the Government
eventually remitted all payment to Delta for the work that
Delta had completed on the project, pursuant to the parties'
agreement.

Ordinarily, under unjust enrichment, the measure of
restitution is the amount of enrichment received. Restatement
(FIRST) of Restitution § 1. It could not, therefore, be said
that the Government unfairly retained a benefit where the
contract called for work to proceed diligently pending dispute,
where cistern construction was part of the parties' written
contract and where the Government paid Delta for the work that
Delta completed.

[17]Delta further contends that the trial court erred because "the
record is filled with sufficient evidence upon which the court

D.C. Crim. App. No. 2006-0104
Memorandum Opinion
Page 14

## V. CONCLUSION

As the trial court found, it is clear from the record below that the parties to this action manifested their mutual assent to be bound by contract. (App. 12). Because an explicit enforceable contract existed between the parties, Delta's claim for unjust enrichment must fail. On this basis, we **AFFIRM.**

---

may determine the unjust enrichment claim." (Appellant's Brief at 12.) However, Delta fails to indicate precisely where the record supports such a claim. Likewise, the three substantive cases that Delta cites in its entire brief fail to raise a single instance where an unjust enrichment claim prevailed where the relationship between the parties was entirely founded on a written agreement or express contract.